## UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF LOUISIANA

KEITH DIALS,

*Plaintiff*

v.

PHILLIPS 66 COMPANY AND
PHILLIPS 66,

*Defendants*

CIVIL ACTION NO. 2:21-cv-1660

JURY TRIAL DEMANDED

## ORIGINAL COMPLAINT AND JURY DEMAND

### I.      INTRODUCTION

1.       Keith Dials is a 56-year-old maintenance professional who spent several decades of his career working his way up the ladder. After impressing the Phillips 66 Maintenance Manager while performing contract work at the Alliance Refinery in Belle Chase, Louisiana, Defendants offered Mr. Dials a full-time position at the refinery. Mr. Dials accepted this promising job opportunity and looked forward to finishing his career with respect and dignity before retiring. Instead, Mr. Dials was assigned to younger supervisors who were well known throughout the Alliance Refinery for discriminating against older employees. This behavior emboldened Mr. Dials' younger co-workers to discriminate against him. Mr. Dials repeatedly reported this discrimination to the company's Ethics Hotline and to Alliance Refinery's Human Resources Manager, Ann Janson. Instead of investigating Mr. Dials' complaints, however, Ms. Janson facilitated the Defendants' discriminatory conduct, even after Defendants began blatantly retaliating against Mr. Dials for filing complaints. Just weeks after Mr. Dials' final complaint, Ms. Janson and another supervisor abruptly fired him and invented a blatantly pretextual reason to

justify his termination. Suddenly, Mr. Dials, who had been planning and preparing for the final years of his career before retiring, was unemployed for the first time in decades. This caused significant financial and emotional harm that continues each day. Mr. Dials is just one of many older workers targeted by Ms. Janson and the discriminatory supervisors at the Alliance Refinery, as Defendants work systemically to push out their most qualified, experience, and committed employees, only to replace them with younger, less qualified individuals.

## II.    JURISDICTION AND VENUE

2.      This Court has jurisdiction over Mr. Dials' federal claims pursuant to 28 U.S.C. § 1331 because they arise under the Age Discrimination in Employment Act of 1967 ("ADEA"), 29 U.S.C. § 621, *et seq.*, which is a federal statute.

3.      This court has supplemental jurisdiction over Mr. Dials' state law causes of action pursuant to 28 U.S.C. § 1367.

4.      Venue is proper in this district under 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events or omissions giving rise to Mr. Dials' claims occurred within Plaquemines Parish, which is in the Eastern District of Louisiana, and Defendants own and operate the Alliance Refinery, located in Belle Chasse, Plaquemines Parish, Louisiana, which is within the Eastern District of Louisiana.

## III.    PARTIES

5.      Plaintiff **KEITH DIALS** is a 56-year-old individual who resides in Lawrence County, in the State of Kentucky. Mr. Dials was formerly employed by Defendants at the Alliance Refinery located in Belle Chasse, Plaquemines Parish, Louisiana, within the Eastern District of Louisiana (hereinafter "Alliance Refinery").

6.      Defendant **PHILLIPS 66** is a publicly traded Delaware corporation doing business in the State of Louisiana. Defendant Phillips 66 and its wholly-owned subsidiary, Phillips 66

Company, own and operate Alliance Refinery. Defendant Phillips 66 employed more than 800 individuals at Alliance Refinery, and more than 10,000 employees in total, at all times relevant to this Complaint.

7. Defendant **PHILLIPS 66 COMPANY** is a foreign corporation doing business in the State of Louisiana and a wholly-owned subsidiary of Phillips 66. Defendant Phillips 66 Company and its parent company, Defendant Phillips 66, own and operate Alliance Refinery, where they employed more than 800 individuals at all times relevant to this Complaint.

## IV.    EXHAUSTION OF ADMINISTRATIVE REMEDIES

8. On October 28, 2020, Mr. Dials timely filed an Equal Employment Opportunity Commission (EEOC) Charge of Discrimination alleging age discrimination and retaliation by Defendants.

9. Mr. Dials requested a Notice of Right to Sue on July 1, 2021, after more than 60 days had elapsed since the EEOC assumed jurisdiction over his Charge of Discrimination.

10. On July 2, 2021, the EEOC issued a Notice of Right to Sue pursuant to Mr. Dials' request.

11. This action is being filed within 90 days of Mr. Dials' receipt of the EEOC's Notice of Right to Sue.

12. Mr. Dials has fully complied with all prerequisites to jurisdiction in this Court under the ADEA.

## V.    FACTS

**A.    Mr. Dials was a Maintenance Supervisor with Over Three Decades of Industry Experience.**

13. Mr. Dials is a 56-year-old industrial maintenance professional with over 30 years of experience. He has extensive experience supervising workers and on-site contractors,

monitoring maintenance operations, and ensuring compliance with health, safety, and environmental rules and regulations in the oil refining industry.

14.     Mr. Dials has certifications in welding, pipe-fitting, and other technical trades, and has received extensive training in OSHA safety standards. During his career, he has received many awards for overseeing worksites with no accidents, outstanding quality, and cost control.

15.     Before his employment with Defendants, Mr. Dials served as an on-site contractor at the Alliance Refinery, managing the day-to-day operations of its Maintenance Group from April 2017 to June 2018.

**B.      Phillips 66 Hired Mr. Dials Based on his Strong Performance as an On-Site Contractor at Alliance Refinery.**

16.     As a contractor at Alliance Refinery, Mr. Dials was supervised by Patrick O'Hara, the head of the Maintenance Department at the Alliance Refinery at the time.

17.     Recognizing Mr. Dials' aptitude for maintaining safe and productive work sites, Mr. O'Hara seized the opportunity to bring Mr. Dials on as a full-time Maintenance Supervisor in June 2018.

18.     The vast majority of the other supervisors in the Maintenance Department at Alliance Refinery were much younger than Mr. Dials, including Chris Davis, Maintenance Supervisor (39 years old); Armond Dinet, Maintenance Supervisor (48 years old); Chad Meyers, Maintenance Supervisor (44 years old); Glen Otero, Maintenance Supervisor (36 years old); Chad Sanchez, Planning Lead (36 years old); and Brian Watterson, Warehouse Supervisor (30 years old). The only other Maintenance Supervisor who was close to Mr. Dials in age was Peter Ernst (53 years old), who Defendants abruptly terminated just three months before Mr. Dials.

**C.     Mr. Ansalve, Ms. Bergeron, and Mr. Dials' Younger Co-Workers Openly
Discriminated Against Him Because of His Age.**

19.     Within Mr. Dials' first month of joining Phillips 66, Emily Bergeron, Interim
Maintenance Manager, took Mr. O'Hara's position as head of the Maintenance Department and
assigned Terry Ansalve, Maintenance Superintendent, to oversee Mr. Dials. Ms. Bergeron became
Mr. Dials' second-line supervisor.

20.     From the start, Mr. Ansalve set Mr. Dials up to fail. Without training him in any
capacity, Mr. Ansalve overloaded Mr. Dials with a much heavier workload than his younger peers,
who Mr. Ansalve assigned to oversee manageable amounts of work. Mr. Ansalve assigned Mr.
Dials to oversee Complex 6, which was the largest complex in the refinery and required the most
maintenance due to the large number of pumps it contained.

21.     Additionally, Mr. Ansalve assigned Mr. Dials to oversee the refinery's heavy
equipment, equipment rentals, garage and mechanic shop, hurricane preparations, water repairs
plant-wide, pest control, animal control, Hoist and Crain, Turner Cranes, Firewater Crew, and
Austin Water. Then, Mr. Ansalve refused to provide Mr. Dials with adequate support.

22.     In July 2018, Mr. Ansalve refused Mr. Dials' requests for additional staff to help
ensure he could properly oversee the responsibilities assigned to him. Mr. Ansalve did, however,
routinely reassign workers who were working for Mr. Dials to work for Chad Meyers, a
Maintenance Supervisor 11 years younger than Mr. Dials. Mr. Ansalve told Mr. Dials that he could
handle the disproportionately large workload because he was older than his peers.

23.     Throughout 2018, whenever Mr. Dials sought help from Ms. Bergeron for
additional workers, she similarly rejected his request and directed him to resolve the issue on his
own.

24.     In July 2018, Mr. Dials' younger colleagues in the Maintenance Department also began to subject him to hostile and discriminatory treatment. For example, in July 2018, Mr. Meyers told Mr. Dials that he was unqualified for his new job and that no one in the department liked or trusted him.

25.     Also, in July 2018, Liz Tapia, an administrative assistant in the Maintenance Department, refused to provide administrative support to Mr. Dials—even though providing this assistance was part of her job. However, she regularly provided similar help to younger Maintenance Supervisors, including Mr. Meyers and Glen Otero, who was over 20 years younger than Mr. Dials. Mr. Dials raised concerns to Mr. Ansalve, Ms. Tapia's direct supervisor, about her discriminatory conduct in July 2018, but Mr. Ansalve defended Ms. Tapia, saying he was "like her."

26.     Mr. Dials' younger peers in the Maintenance Department refused to follow his directions. For example, in July 2018, Mr. Dials instructed the younger Maintenance Supervisors not to rent cranes without notifying him, they refused to cooperate. Mr. Ansalve then blamed Mr. Dials for the resulting workflow interruptions. Mr. Ansalve still accused Mr. Dials of mismanagement, even after learning the younger supervisors were at fault.

27.     In July 2018, Mr. Dials also complained to Ms. Bergeron that his younger peers were ignoring his oversight. She also disregarded his concerns.

28.     During Mr. Dials' first performance review in July 2018, Mr. Ansalve told Mr. Dials that he did not deserve his position or salary. Even though he commended Mr. Dials for his good job performance, Mr. Ansalve said that he had not wanted to hire Mr. Dials. Mr. Ansalve had supervised Mr. Dials for just weeks and did not explain his basis for this unprofessional assessment.

29.     In August 2018, in front of several other younger Maintenance Supervisors, Mr. Ansalve exclaimed, without warning, "You sucked Patrick O'Hara's d*ck to get your job, didn't you?" Everyone in the room laughed at Mr. Dials, who walked out of the room, humiliated.

30.     During the fall of 2018, Mr. Dials struggled to manage the enormous workload that Mr. Ansalve assigned him.

31.     In December 2018, during Mr. Dials' year-end performance review, Mr. Ansalve again belittled Mr. Dials, criticized his performance, and stated that he did not deserve his job and that Mr. Ansalve never wanted to hire him. Mr. Dials again explained that he was overloaded with work, that he had not received adequate training, and that the Maintenance Department staff, like Ms. Tapia and the younger Maintenance Supervisors, were refusing to work with him. Mr. Ansalve refused to help.

**D.     Supervisors and Co-Workers Continued to Discriminate Against Mr. Dials Throughout 2019.**

32.     In January 2019, Mr. Ansalve required Mr. Dials to complete an unnecessary daily maintenance report but did not require the other Maintenance Supervisors to do so. Mr. Ansalve also routinely asked Mr. Dials' younger peers to oversee his work, undermining Mr. Dials' authority among his staff.

33.     In Spring 2019, an operations employee incorrectly told Mr. Ansalve that Mr. Dials did not know where to install a certain pump in Complex 6. When Mr. Dials explained that he did know, and the operations employee was mistaken, Mr. Ansalve called Mr. Dials a "liar" in front of the younger Maintenance Supervisors.

**E.     Mr. Ansalve and Mr. Campbell Continued to Discriminate and Retaliate Against Mr. Dials After He Engaged in Protected Activity.**

34.     Exhausted by Mr. Ansalve's continual harassment and discrimination, Mr. Dials called the Phillips 66 Ethics Hotline in March 2019, reported the hostile work environment created

by Mr. Ansalve, and informed the operator that he was being treated differently and unfairly as compared to younger Maintenance Supervisors. Mr. Dials was told that Phillips 66 would look into his concerns.

35.     After six weeks passed, in April 2019, Mr. Dials again called the Ethics Hotline to inquire about his complaint. Mr. Dials was told that Phillips 66 was would no longer investigate his complaint.

36.     To make matters worse, Phillips 66 informed Mr. Ansalve about Mr. Dials' complaint against him, and in retaliation, Mr. Ansalve's abusive conduct grew even more severe. For example, in July 2019, Mr. Dials was assigned to a new supervisor, David Campbell. During their introductory meeting, Mr. Ansalve introduced Mr. Dials as a "redneck" and pointed out that Mr. Dials was the oldest person in the Maintenance Department. In contrast, Mr. Ansalve introduced the younger Maintenance Supervisors respectfully. Mr. Campbell was close friends with Mr. Ansalve, and he soon began to discriminate against Mr. Dials as well.

37.     Mr. Ansalve then laterally transferred to the position of Turnaround Superintendent but remained heavily involved in the operation of the Maintenance Department. Throughout the summer and fall of 2019, Mr. Ansalve berated Mr. Dials publicly during the daily maintenance planning meetings by interjecting whenever Mr. Dials attempted to speak, dismissing his comments as unimportant, and accusing Mr. Dials of not knowing what he was talking about.

**F.     Mr. Dials Again Reported the Age Discrimination he was Experiencing.**

38.     In July 2019, Mr. Dials told the EAP Director, David Steweki, about the hostile work environment he was experiencing. Mr. Steweki suspected that Mr. Dials' hostile work environment was the result of age discrimination and advised that Mr. Dials file an EEOC charge.

39.     Meanwhile, Mr. Dials continued to endure discriminatory harassment from his peers and subordinate employees. For example, Ms. Tapia still refused to provide administrative support to Mr. Dials.

40.     In October 2019, Ms. Tapia sent a text message to a contractor, Vernon Davis, explaining that she was going to do everything possible to get Mr. Dials fired.

41.     Another Maintenance Supervisor, Armond Dinet, who is 9 years younger than Mr. Dials, told him daily, throughout his employment at the refinery, "No one likes you here."

42.     Additionally, Mr. Meyers regularly humiliated and berated Mr. Dials in the daily maintenance meetings. For example, in November 2019, while Mr. Dials was speaking, Mr. Meyers, in a room full of people, said: "Keith, don't you know what the f*ck is going on?"

**G.     Mr. Ansalve and Ms. Bergeron Targeted Other Older Employees as Well.**

43.     Mr. Dials was not the only older employee in the Maintenance Department at the Alliance Refinery that was subjected to age discrimination. Several other older employees were discriminated against by Ms. Janson, Mr. Ansalve, and Ms. Bergeron. On November 6, 2019, Mr. Ansalve and Ms. Janson fired Peter Ernst, who was 51 years old at the time, from his position as Senior Maintenance & Reliability Supervisor. Mr. Ernst had suffered years of discrimination at the hands of Mr. Ansalve, Ms. Bergeron, and Ms. Janson before his termination. For example, Mr. Ansalve assigned Mr. Ernst a much heavier workload than his peers, just as he did with Mr. Dials. Mr. Ansalve and Ms. Janson then subjected Mr. Ernst to unwarranted discipline before abruptly terminating him.

**H.     After Firing Other Older Employees, Mr. Ansalve Further Overburdened Mr. Dials by Assigning him Additional Job Duties.**

44.     After Ms. Janson and Mr. Ansalve fired Mr. Ernst, Mr. Ansalve further targeted Mr. Dials by assigning him many of Mr. Ernst's former responsibilities, including oversight of the

blast and sand yard, the refinery insulators, the sheet metal shop, and the scaffold yard. He was also forced to take Mr. Ernst's "weekend call-outs" along with his own, which meant that Mr. Dials was required to spend an additional four to eight hours each weekend at the Alliance Refinery. Mr. Ansalve did not assign additional work to Mr. Dials' younger peers.

45.     As a result of his stressful work environment, Mr. Dials sought treatment from a doctor for anxiety in November 2019. The doctor prescribed him medication to address his blood pressure, anxiety, and depression.

46.     In November 2019, while Mr. Dials was working with a contractor, Mr. Campbell approached Mr. Dials, interrupted his conversation, swore at him, and told Mr. Dials to "not be in Liz [Tapia]'s business." Mr. Dials did not know what "business" Mr. Campbell was referring to. He was also shocked and embarrassed by the public confrontation.

47.     In December 2019, during Mr. Dials' year-end performance review, despite knowing that Mr. Dials was overwhelmed with work, Mr. Campbell unfairly criticized Mr. Dials' performance and placed him on a Performance Improvement Plan. Mr. Dials protested that he oversaw an unmanageable amount of work and did not have sufficient resources. Mr. Campbell similarly ignored Mr. Dials' concerns. In violation of Phillips 66 policy, Mr. Campbell never set up an improvement plan or discussed the PIP again with Mr. Dials.

I.      **Mr. Dials Reported Additional Discrimination and Retaliation to Phillips 66.**

48.     In December 2019, concerned for his wellbeing, health, and job, Mr. Dials again called the Ethics Hotline to report the conduct of Mr. Ansalve, Mr. Campbell, Ms. Tapia, and Mr. Meyers. Phillips 66 said it would investigate his complaints, but Mr. Dials never received a response.

49.     As a result, Mr. Dials put in an application for a transfer to another Phillips 66 refinery located in Lake Charles, Louisiana, to try to escape the hostile environment fostered by

Mr. Ansalve and Mr. Campbell, and to hopefully avoid unwarranted discipline and termination from Ms. Janson.

50.     However, Phillips 66 never responded to Mr. Dials' transfer request.

**J.      Mr. Ansalve and Mr. Campbell Continued to Target Mr. Dials by Overburdening him with Work and Hyperscruitinizing His Performance.**

51.     Mr. Ansalve and Mr. Campbell continued to assign more work to Mr. Dials. His workload reached its height in January 2020, when Mr. Ansalve and Mr. Campbell assigned Mr. Dials to the following additional areas of maintenance management: tool shop, fab shop, grass cutting, roads and grounds, hydro blasting/vacuum truck/bundle cleaning slab, painters/lead program/paint program/blast and paint yard.

52.     At the same time, they also assigned him the role of overseeing the refinery's administration building, a job duty that belonged to Mr. Meyers previously. Mr. Meyers had scheduled a paint job for the building but never ordered the paint. Without paint, the job was unnecessarily delayed, and Mr. Campbell then blamed Mr. Dials for the failure. Mr. Campbell told Mr. Dials, "All you are good for is pissing people off."

**K.       Mr. Ansalve Solicited Younger Employees to See if They Would Replace Mr. Dials.**

53.     In January 2020, Mr. Ansalve began approaching younger employees and asking them if they were interested in taking Mr. Dials' position. Among these younger employees was Sean Serencey, Trainer for Complex 6, who is about 10 years younger than Mr. Dials. Mr. Serencey declined the position because he did not want to assume Mr. Dials' enormous workload.

**L.      Mr. Dials Complained of Discrimination and Retaliation to Ms. Janson.**

54.     In February 2020, Mr. Dials met with Ms. Janson to lodge a third complaint of discrimination and informed her of the hostile work environment created by Mr. Ansalve, Mr. Campbell, Ms. Tapia, Mr. Meyers, and others.

55.     After hearing Mr. Dials' complaint, Ms. Janson refused to investigate.

56.     Instead, she directed Mr. Dials to take his hostile coworkers and supervisors to dinner to "win them over" and ordered him to report back to her after the dinner.

57.     Complying with this demeaning directive, Mr. Dials invited his coworkers and supervisors to dinner, all of whom rejected the invitation. Among these coworkers were Mr. Campbell, Mr. Meyers, and Ms. Tapia, who were all aware that Mr. Dials lodged complaints against them. Mr. Dials told Ms. Janson that all his invitations were rejected, and she told him to "keep trying."

**M.     Ms. Janson and Mr. Campbell Created a Pretextual Justification to Terminate Mr. Dials.**

58.     On March 5, 2020, after a water leak, Tony Barre, Operations Field Supervisor, and Nat Sylve, Operations Shift Superintendent, asked Mr. Dials to help clamp a faulty pipe. Joshua Arwood, the Safety Coordinator for the Operations and Maintenance Department, advised Mr. Dials to swiftly clamp the pipe without a permit or holding a risk meeting. Under the Alliance Refinery On-Streak Leak Repairs and Enclosures Procedure, holding a risk meeting and obtaining a permit was unnecessary before clamping the pipe because the leak was an emergency and there were no harmful chemicals involved.

59.     While reporting to Mr. Campbell in January 2020, Mr. Dials had addressed a similar leak without obtaining a permit or holding a risk meeting. After the January 2020 leak, Mr. Campbell never suggested Mr. Dials erred by not obtaining a permit or holding a risk meeting.

60.     On March 6, 2020, Mr. Campbell and Ms. Janson accused Mr. Dials of improperly clamping the pipes without a permit or holding a risk meeting. They falsely claimed this was a violation of Phillips 66 policy.

61.    In response, Mr. Dials explained that (1) he was advised by Mr. Arwood to clamp the pipes quickly without obtaining a permit or holding a risk meeting; (2) that he clamped the pipe under the oversight of Mr. Barre and Mr. Sylve; (3) that a permit and risk meeting were not required under Phillips 66 policy; and (4) that he had conducted a similar job in January 2020 without obtaining a permit or holding a risk meeting, which Mr. Campbell was fully aware of.

62.    Nevertheless, Mr. Campbell and Ms. Janson placed Mr. Dials on mandatory administrative leave.

63.    On March 9, 2020, Ms. Janson and Mr. Campbell terminated Mr. Dials, claiming he violated company policy when he clamped the pipe without a risk meeting or permit.

64.    Mr. Arwood, Mr. Barre, and Mr. Sylve were not disciplined despite their role and responsibility in the clamping on March 5, 2021. Neither Mr. Arwood, Mr. Barre, nor Mr. Sylve had complained of age discrimination in the past.

65.    Mr. Dials was replaced by Tony Ditta, who is nearly 20 years younger than him and has no maintenance experience.

66.    Following his wrongful termination, Phillips 66 asked that the Louisiana Workforce Commission deny Mr. Dials unemployment benefits, which has since then been reversed by the Louisiana Workforce Commission.

**N.    Mr. Dials Was One of Almost Two Dozen Alliance Refinery Employees Over the Age of 40 Who Were Terminated by Ann Janson in Just Two Years.**

67.    Mr. Dials was just one of many dedicated Alliance Refinery employees who were targeted based on their age. Between 2019 and 2021, many other individuals over 40 were terminated, laid off, forced to resign, or forced to retire from the Maintenance Department at Alliance Refinery, including Andrew Rogers, Peter Ernst, Jeff Winget, David Binderwald, Emily

Campbell, Mike Terrio, Brian Duncan, Cynthia Becnel, Lina Farrar, Blair Stevens, George Turlich, Darren Williams, and William Bartholomew.

68.     Between 2019 and 2021, Ms. Janson also terminated many employees over the age of 40 who worked in other departments at Alliance Refinery, including Jeff Winget, Brian Duncan, Chris Pizzuto, Jack Serigne, Blair Stevens, Janice Munkres, and Galen Roy.

69.     Ann Janson made the decision to terminate Mr. Dials and each of the individuals in Paragraphs 67 and 68.

70.     Ms. Janson terminates employees without conducting an independent investigation and is influenced by employees' supervisors in determining whether to terminate employees.

71.     During her employment, Ms. Janson targeted older employees based on a bias against these employees based on their age, and in favor of younger employees.

72.     Further, Ms. Janson targeted approximately 10% of the workforce at Alliance Refinery for termination to provide cost savings to Defendants. Ms. Janson also targeted older and disabled workers to increase cost savings.

## VI.     CAUSES OF ACTION

### FIRST CAUSE OF ACTION
### Violation of the Age Discrimination in Employment Act ("ADEA")
### 29 U.S.C. § 621, *et seq.*
### Disparate Treatment
### *(Against all Defendants)*

73.     Mr. Dials hereby incorporates all paragraphs of this Complaint as though fully set forth herein.

74.     At all times pertinent to this Complaint, Defendants were employers within the meaning of 29 U.S.C. § 630 and employed twenty or more employees.

75.     At all times pertinent to this Complaint, Mr. Dials has been at least forty years old.

76. Mr. Dials was subjected to adverse employment action when he was not transferred to open positions at other refineries owned and operated by Defendants for which he was qualified, and when he was terminated.

77. Mr. Dials was over 40 years old when Defendants subjected him to the adverse employment actions described above.

78. Mr. Dials was qualified for his position at Phillips 66 and qualified for the transfers he applied for.

79. Defendants would not have taken adverse employment actions against Mr. Dials but for his age.

80. Mr. Dials' supervisors subjected him to adverse employment actions when they disciplined him and recommended his termination based on his age.

81. Although Mr. Dials was qualified for promotions, Defendants promoted non-disabled individuals in place of Mr. Dials.

82. Mr. Dials' supervisors intended to cause him to suffer an adverse employment action.

83. Mr. Dials' supervisors influenced the decisionmaker to cause the adverse employment actions taken against Mr. Dials.

84. The decisionmaker in Mr. Dials' termination also terminated him based on his age.

85. Defendants' reasons for terminating Mr. Dials were not legitimate and were merely pretext for age discrimination.

86. Mr. Dials was treated less favorably than similarly situated younger employees, and he was replaced by someone younger than him after his termination.

87. Mr. Dials was subjected to severe and pervasive harassment by his supervisors.

88.     This harassment altered the terms and conditions of his employment and created a hostile and abusive work environment.

89.     Mr. Dials would not have been harassed by his supervisors but for his age.

90.     Mr. Dials' supervisors knew, or in the exercise of reasonable care, should have known that Mr. Dials was being harassed based on his age.

91.     Alternatively, Defendants utilized employment practices that are facially neutral in their treatment of employees but had a significantly disproportionate adverse impact on persons over 40 years old.

92.     Defendant's employment practices resulted in Mr. Dials' termination, and well as the termination of many other individuals over 40 years old.

93.     Defendants are vicariously liable for the actions of Mr. Dials' supervisors.

94.     As a direct and proximate result of Defendants' discriminatory conduct, Mr. Dials has suffered substantial economic and non-economic damages, and he is entitled to such damages, liquidated damages, and attorneys' fees and costs as permitted by law.

95.     Defendants' discriminatory conduct was willful and in knowing and/or reckless disregard of the requirements of the ADEA.

96.     Defendants are liable for the acts and/or omissions of their agents and employees.

97.     Defendants, either directly or by and through their agents, directly and proximately caused Mr. Dials' severe injuries, damages, and losses.

**SECOND CAUSE OF ACTION**
**Violation of the Age Discrimination in Employment Act ("ADEA")**
**29 U.S.C. § 621, *et seq.***
**Retaliation**
***(Against all Defendants)***

98.     Mr. Dials hereby incorporates all preceding paragraphs of this Complaint as though fully set forth

99.     As set forth in detail above, Defendants were aware of Mr. Dials' complaints that he was being discriminated against based on his age. In response, Defendants subjected him to a hostile work environment, refused to transfer him to qualified positions for which he was qualified, and then terminated Mr. Dials.

100.    The adverse actions taken against Mr. Dials were in retaliation for complaining about discrimination and were motivated by retaliatory animus.

101.    Although Mr. Dials was qualified to be transferred, he was not, and instead, individuals who had not engaged in protected activity were allowed to transfer. Further, Mr. Dials was replaced by individuals who did not engage in protected activity.

102.    Mr. Dials suffered emotional damages, lost wages, loss of benefits, and other losses as a result of Defendants' retaliation against him.

103.    Defendants are liable for the acts and/or omissions of their agents and employees. Defendant, either directly or by and through their agents, directly and proximately caused Mr. Dials' severe injuries, damages, and losses.

### THIRD CAUSE OF ACTION
### Age Discrimination in Violation of the
### Louisiana Employment Discrimination Law
#### *(Against all Defendants)*

104.    Mr. Dials hereby incorporates all preceding paragraphs of this Complaint as though fully set forth herein.

105.    The Louisiana Employment Discrimination Law ("LEDL") provides that "[i]t is unlawful for an employer to . . . [f]ail or refuse to hire, or to discharge, any individual or otherwise discriminate against any individual with respect to his compensation, or his terms, conditions, or privileges of employment because of the individual's age." La. R.S. § 23:312(A).

106.   At all pertinent times, Mr. Dials performed the duties of his job competently and was more than qualified.

107.   At all times relevant to this action, Defendants were "employers" as that term is defined by LEDL and Mr. Dials was a qualified employee who was over 40 years old.

108.   As described above, Mr. Dials was subjected to many adverse employment actions because of his age, including but not limited to, subjecting him to a hostile work environment, failing to transfer, and terminating him from his employment.

109.   Although Mr. Dials was qualified for a transfer, Defendants refused to transfer him to a different refinery, and instead continued to subject him to a hostile work environment in his position at Alliance Refinery.

110.   Defendants intentionally discriminated against Mr. Dials because of his age.

111.   Mr. Dials was terminated from his employment for no legitimate, non-discriminatory reason, as alleged above, and if not for Mr. Dials' age, he would not have been subject to discrimination by Defendants.

112.   Defendants knew or should have known of the unlawful acts and practices alleged above yet failed to act promptly to prevent or end the harassment and discrimination.

113.   Defendants are liable for the acts and/or omissions of their agents and employees. Defendants, either directly, or by and through its agents, which directly and proximately caused Mr. Dials severe injuries, damages, and losses.

114.   As a result of Defendants' misconduct, Mr. Dials has suffered and continue to suffer damages, including but not limited to lost wages and emotional damages, and is thus entitled to all damages and remedies available under LEDL pursuant to La. R.S. § 23:303.

115.    Defendants' unlawful and discriminatory conduct in violation of La. R.S. 23:332(A)(1) was outrageous and malicious, was intended to injure Mr. Dials, and was done with conscious disregard of Mr. Dials' civil rights, entitling Mr. Dials to an award of attorneys' fees under La. R.S. § 23:303.

**FOURTH CAUSE OF ACTION**
**Discrimination and Retaliation in Violation of the**
**Louisiana Human Rights Act**
***(Against all Defendants)***

116.    Mr. Dials hereby incorporates all preceding paragraphs of this Complaint as though fully set forth herein.

117.    The Louisiana Human Rights Act ("LHRA") is intended to "safeguard all individuals within the state from discrimination because of . . . age, [and] disability . . . in connection with employment . . . ; to protect their interest in personal dignity and freedom from humiliation; to make available to the state their full productive capacities in employment . . . ; and to further the interest, rights, and privileges within the state." La. R.S. § 51:2231.

118.    The LHRA makes it unlawful for an employer, as defined by LEDL, "[t]o retaliate or discriminate in any manner against a person because he has opposed a practice declared unlawful by this Chapter or by [LEDL]," La. R.S. § 51:2256, and provides civil remedies for "any person deeming himself injured by" such unlawful conduct. La. R.S. § 51:2264.

119.    At all times relevant to this action, the LHRA has been in full force and effect and has applied to Defendants' conduct.

120.    As set forth above, Defendants discriminated against Mr. Dials based on his age and in connection with his employment, as prohibited by the LHRA.

121.    Defendants retaliated against Mr. Dials because he complained of discrimination and refused to investigate his complaints, failed to transfer him, and terminated his employment.

122.   Defendant engaged in conduct materially adverse to a reasonable employee and took adverse employment actions against Mr. Dials, as heretofore alleged.

123.   The adverse actions taken against Mr. Dials were in retaliation for requesting accommodations and were motivated by retaliatory animus.

124.   Although Mr. Dials was qualified for a transfer, he was not, and instead, individuals who had not engaged in protected activity were transferred. Further, Mr. Dials was replaced by individuals who did not engage in protected activity.

125.   Defendants are liable for the acts and/or omissions of their agents and employees. Defendants, either directly, or by and through their agents, directly and proximately caused Mr. Dials severe injuries, damages, and losses.

126.   As a result of Defendants' retaliation, Mr. Dials has suffered and continues to suffer damages, including but not limited to lost wages and emotional damages, and is thus entitled to all damages and remedies available under LEDL and the LHRA.

127.   Defendants' unlawful and retaliatory conduct in violation of La. R.S. 23:332(A)(2) was outrageous and malicious, was intended to injure Mr. Dials, and was done in conscious disregard of Mr. Dials' civil rights, entitling Mr. Dials to an award of attorneys' fees under La. R.S. 23:3030.

## VII.   RELIEF REQUESTED

WHEREFORE, Plaintiff Keith Dials requests judgment be entered against Defendants and that the Court grant the following:

a.   Declaratory relief;

b.   Injunctive relief including, but not limited to, reinstatement;

c.   Judgment against Defendants for Plaintiffs' asserted causes of action;

d.  Damages in such an amount as shall be proven at trial for back-pay and damages including lost benefits, wages, promotions, tenure, seniority, lost promotions, and other employment opportunities;

e.  Award of compensatory damages including for emotional distress;

f.  An order for the Defendant to reinstate Plaintiff or in the alternative to pay for front-pay and benefits;

g.  Punitive damages;

h.  Award of treble damages;

i.  Award of liquidated damages;

j.  Award costs and attorney's fees;

k.  Pre- and post-judgment interest; and

l.  Order such other and further relief, at law or in equity, to which Plaintiffs may be justly entitled.

**PLAINTIFF REQUESTS A TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

Respectfully submitted this 3rd day of September, 2021.

/s/ Casey Rose Denson
**Casey Rose Denson (La. Bar #33363)**
**Justine G. Daniel (La. Bar #36856)**
**CASEY DENSON LAW, LLC**
4601 Dryades Street
New Orleans, LA 70115
Phone: (504) 224-0110
Fax: (504) 534-3380
cdenson@caseydensonlaw.com
jdaniel@caseydensonlaw.com
*Attorneys for Plaintiff Keith Dials*